Justice W. JONES,
specially concurring.
It is with some dismay and regret that I write this separate opinion solely to respond to what I consider the scurrilous and unfounded personal attacks upon the integrity and motivations of the majority in this case, which includes me. Although I feel that such personal attacks are totally inappropriate in a judicial opinion and am torn by whether such attacks even merit or justify a response, after weeks of reflection and mixed feelings, I feel compelled at least briefly to respond.
First, the dissent by Justice Eismann accuses the majority of lying, misrepresentations and falsification of the record based solely on the misguided belief that the majority for some unexplained reason wants the plaintiff in this case to “win.” Speaking solely for myself in this separate opinion, I can assure the reader that at least on my part nothing could be further from the truth, and I firmly believe that is true of the other justices as well. It is astounding and beyond belief to me, who has spent nearly 45 years of my life as an insurance defense attorney battling plaintiffs in personal injury cases, that now I should be castigated for some unexplained reason that I want the plaintiff to “win” this ease. Such an assertion is beyond ludicrous. I took a vow when I took this office to decide cases based on the law and legal reasoning. I am proud of my record and invite any reader to research the opinions I have written over the past six plus years and they will see that there is no pattern or indication whatsoever that my opinions favor either the plaintiff or the defense. I am deeply saddened and offended by such unfounded, unsupported allegations. There is not a shred of evidence to support such allegations, apart from the fact that they are totally inappropriate and unfounded in a judicial opinion. I am sad that Justice Eismann’s dissenting opinion lowers itself to personal attacks more suited to a school yard argument among teenagers than to a professional legal discourse that should be expected in a judicial opinion.
I can certainly respect the dissenting opinion of Justice Horton, even though I disagree with its conclusion. At least it is founded on a scholarly, judicial approach to a close issue on which there is room for disagreement. Bad judges might make bad law, but at least on my part that is not the situation here. Beyond what I have said I do not feel that any further discussion of personal assertions and attacks is appropriate. Indeed, I strug *819 gled a long time to consider whether I am lowering myself to the same level as Justice Eismann by even dignifying the attacks with a response. Enough said. Let’s turn to the merits of the case.
I have joined the majority Opinion for one very simple reason. The fact is this case is nothing more than a matter of common sense and basic legal reasoning. I am a strong believer that sometimes the law gets lost in theories, over-analysis, and hyperbole and never sees the forest through the trees. Distilled to its essence, in my opinion this case boils down to a dispute between two respected, licensed and competent physicians over how and where Mrs. Nield contracted the infectious diseases with which she is afflicted. In my opinion, both physicians are qualified to state their opinions. This is not a matter of “junk science”, such as is the subject of the United States Supreme Court decision in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which by the way the State of Idaho has never adopted. In this case, both physicians have medical training and expert knowledge regarding MRSA and pseudomonas and where they exist, how they are communicated, their treatment and their effect upon patients. It is agreed these experts do not have exactly the same qualifications or areas of specific expertise, but neither is required for an expert to state his or her opinion. E.g., Weeks v. E. Idaho Health Serv., 143 Idaho 834, 837, 153 P.3d 1180, 1183 (2007) (“A qualified expert is one who possesses ‘knowledge, skill, experience, training, or education.’ I.R.E. 702. Formal training is not necessary, but practical experience or special knowledge must be shown....”); Warren v. Sharp, 139 Idaho 599, 605, 83 P.3d 773, 779 (2003); West v. Sonke, 132 Idaho 133, 138, 968 P.2d 228, 233 (1998). Certainly, both have substantially more knowledge regarding the medical issues than the average juror and their testimony will undoubtedly be helpful to a jury. I.R.E. 702 (“If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify ... in the form of an opinion or otherwise”); Bromley v. Garey, 132 Idaho 807, 811, 979 P.2d 1165, 1169 (1998). It is not appropriate for any court, including this one, to weigh those credentials, weigh the credibility of each of the witnesses, or determine which witness is more persuasive. Those are matters exclusively within the province of a jury. That is the essence of my basis for agreeing with the majority opinion. Both the district court and Justice Eismann’s dissent seem to disregard the status of this case and the junction at which we are. Nothing has been decided in this case about who should “win” this case, contrary to the assertions in Justice Eismann’s dissent. All the majority has decided is that this case merits a jury trial on a genuine issue of material fact that is disputed between the parties and two experts. At least that is the sum total of my intent and expectations in joining the majority. I will not say, and it would be totally inappropriate for me to do so, how I think this case should or will turn out. I can absolutely without any equivocation state that I am not in any way motivated by who should “win” this case. Such an assertion is totally unfounded and offensive to me.