**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 39774**

| | |
|---|---|
| JANICE BLIZZARD, individually and as parent and legal guardian of COLTON BLIZZARD, a minor child; and TINA M. SARRO, Special Administrator of the ESTATE OF RICHARD MAX BLIZZARD, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs-Appellants, | ) |
| v. | )<br>) |
| JOHN PAUL LUNDEBY, M.D. and JANE DOE LUNDEBY, husband and wife and the marital community thereof, and LAKE CITY SURGEONS, PLLC, an Idaho limited liability company, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants-Respondents. | ) |

Coeur d'Alene, September 2013 Term

2014 Opinion No. 38

Filed: March 27, 2014

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County.  Hon. Charles W. Hosack, District Judge.

The order of the district court denying motion for new trial is vacated. This case is remanded for further proceedings consistent with this Opinion.  Costs on appeal are awarded to Appellant.

Winston & Cashett Lawyers, PS, Coeur d'Alene, attorneys for Appellant. Michael T. Howard argued.

Ramsden & Lyons LLP, Coeur d'Alene, attorneys for Respondents. Terrance R. Harris argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This is an appeal from a district court order denying Plaintiff's Rule 59(a)(6) Motion for a New Trial in a medical malpractice lawsuit where the jury found that Defendant, Dr. Lundeby ("Dr. Lundeby"), did not breach the standard of care owed to his patient, Rick Blizzard ("Blizzard"). The district court, although finding the jury's verdict was against the clear weight

1

of evidence, denied a motion for a new trial because it could not say the ultimate outcome would be different if a new trial were granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 2008, Rick Blizzard went to Kootenai Medical Center for lower abdominal pain. At the time, Dr. Lundeby was on-call as the general surgeon. Dr. Lundeby performed an exploratory surgery after an endoscopy revealed that Blizzard had a severely obstructed and distended bowel. During the exploratory surgery, Dr. Lundeby removed a portion of Blizzard's colon and created a temporary colostomy.

On June 4, 2008, Dr. Lundeby performed a colostomy reversal, by which Blizzard's colon was intended to be reattached to his rectum via a circular stapler. This procedure was to create a colorectal anastomosis. The day after Blizzard's discharge on June 11, 2009, Blizzard complained of air and fecal material in his urine. On June 13, 2008, Dr. Lundeby performed a second exploratory surgery where he discovered that Blizzard's bladder had been stapled wrongly "through and through" into the anastomosis, creating a fistula—a passageway between two organs that normally do not connect—which was depositing fecal material into his bladder. Over the course of the next two years, Blizzard underwent eight surgical attempts by specialists to repair his bladder and bowel. Blizzard had no insurance and consequently incurred $852,213 in medical expenses.

On April 13, 2010, Blizzard filed a medical malpractice lawsuit against Dr. Lundeby and Lake City Surgeons. After expending his savings and retirement, incurring a second mortgage on his home, and enduring frustrations with his condition, Blizzard took his life on July 15, 2010. Blizzard's wife, Janice Blizzard, his son, Colton Blizzard, and his sister, Tina Sarro as Special Administrator, filed an Amended Complaint.[1] The Amended Complaint continued the suit for lost wages and medical expenses under Idaho's survival statute and added a claim for wrongful death.

At a jury trial, as to the relevant standard of care, Plaintiffs offered the expert testimony of Dr. Harris who testified that a reasonable surgeon would have taken additional steps to isolate the anastomosis, sought assistance from another surgeon, or aborted the procedure. Essentially, Dr. Harris testified that the standard of care was for Dr. Lundeby to know what he was stapling

---

[1] For the sake of simplicity, "Plaintiffs" as used in this opinion will refer collectively to the plaintiffs of the Amended Complaint filed after Blizzard took his life.

before he stapled anything. On the issue of standard of care, Dr. Lundeby offered the testimony of Dr. Liu who testified that the surgery was within the standard of care "because in my 16 years of practice . . . I've never seen a bladder attached to the rectum in such a fashion."

The jury was presented with two verdict forms. Special Verdict Form A, dealt with whether Dr. Lundeby negligently performed the June 4, 2008, surgery on Blizzard and whether Dr. Lundeby failed to obtain informed consent. If the jury answered "no" to both questions they were not required to proceed to questions of causation and damages.[2] The jury returned a verdict finding that Dr. Lundeby did not negligently perform the June 4, 2008, surgery or fail to get informed consent; and as such, they did not proceed to the issues of causation and damages. Judgment was entered on November 16, 2011.

On November 30, 2011, Plaintiffs filed a Motion for New Trial pursuant to Rule 59(a)(6) of the Idaho Rules of Civil Procedure. In a decision rendered from the bench on January 31, 2012, the district court denied Plaintiffs' Motion for New Trial on the grounds that even though the jury's verdict as to whether Dr. Lundeby negligently performed the June 4, 2008, surgery was not supported by the weight of the evidence, it could not say that a new trial would produce a different result because the jury did not address causation and damages. In other words, it appears the district court could not say Plaintiffs would prevail on causation and damages even if a different jury found Dr. Lundeby negligent. Plaintiffs appeal.

## III. ISSUES ON APPEAL

Whether the district court abused its discretion when it denied Plaintiffs' Motion for a New Trial pursuant to Idaho Rule of Civil Procedure 59(a)(6).

## IV. STANDARD OF REVIEW

The parties dispute the standard of review that applies to a review of a district court's denial of a new trial pursuant to Rule 59(a)(6) of the Idaho Rules of Civil Procedure. Plaintiffs argue that the district court's decision is reviewed for an abuse of discretion. Dr. Lundeby argues that this Court should apply a more stringent standard of review. Particularly, Dr. Lundeby maintains that the grant or denial of a motion for a new trial should be upheld unless "the court has manifestly abused the wide discretion vested in it." Dr. Lundeby argues that a manifest abuse

---

[2] Questions of causation and damages were not on Verdict Form A but presumably on other verdict forms—possibly Verdict Form B—that the jury was not required to consider given its answer of Verdict Form A. However, these verdict forms are not in the record on appeal.

of discretion standard should include an added element: that there "be a strong showing that the abuse of discretion was unmistakable, indisputable or self-evident."

We decline Dr. Lundeby's invitation to change the clearly established standard of review for review of a Rule 59(a)(6) motion. A trial court has broad discretion in ruling on a motion for a new trial. *Burggraf v. Chaffin*, 121 Idaho 171, 173, 823 P.2d 775, 777 (1991). The test for whether a trial court has abused its discretion is as follows:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standard applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. [(*hereinafter* "*Sun Valley* Test")].

*Id.* (citing *Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)); *see also Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 782, 25 P.3d 88, 95 (2001).

Dr. Lundeby relies in part on *Quick v. Crane*, 111 Idaho 759, 769, 803 P.2d 1187, 1197 (1986), for the proposition that a manifest abuse of discretion standard should apply. It is first worth noting that the *Quick* case involved a Rule 59(a)(5) motion for a new trial on the basis of excessive damages. *Id.* This Court noted that "[t]here is a qualitative difference between a trial judge's role in deciding whether a new trial is justified based on the insufficiency of the evidence under Rule 59(a)(6), and whether a new trial is justified based on the amount of the jury's award of damages under Rule 59(a)(5)." *Id.* at 768, 803 P.2d at 1196. Nonetheless, the abuse of discretion review actually utilized in *Quick* is consistent with the *Sun Valley* Test.[3] The factors relied on by this Court in *Quick* are covered by the *Sun Valley* Test. Dr. Lundeby also points to a concurring opinion in *Burggraf v. Chaffin*, 121 Idaho 171, 823 P.2d 775 (1991), to support a higher standard of review. However, the majority in *Burggraf* clearly articulated the appropriate standard of review with respect to a motion for a new trial. *Id.* at 173, 823 P.2d at 777. After reviewing its decision in *Quick*, this Court articulated and applied the *Sun Valley* Test as the appropriate standard of review, which has since been consistently applied by Idaho appellate courts. *Id.*

## V. ANALYSIS

---

[3] In *Quick*, when extensively discussing the abuse of discretion standard of review, the Court examined the following factors: (1) whether the trial court judge applied the correct standard; (2) "an actual exercise of judgment and a consideration of the facts and circumstances . . . ."; and (3) Whether the judge violated the restraints on his discretion by disregarding relevant factual consideration or principles of law. *Id.* at 772, 803 P.2d at 1200.

**The district court abused its discretion when it denied Plaintiffs' Rule 59(a)(6) motion.**

Following the jury's verdict on November 16, 2011, Plaintiffs filed a Rule 59(a)(6) motion for a new trial. The district court ruled that the jury's verdict with respect to Dr. Lundeby's negligence was contrary to the weight of the evidence. The district court noted that the only expert who testified on behalf of Dr. Lundeby was Dr. Liu. Dr. Liu testified as follows: "Nobody has ever made the mistake of stapling a bladder to a rectum. That just doesn't happen; therefore, it's within the standard of care." The district court noted that this was the only reason offered by Dr. Liu and that his reasoning was "nonsensical." However, the district court ultimately denied Plaintiffs' motion for a new trial on the basis that it could not say that a new trial would produce a different result. Particularly, the district court noted that the jury made no determination as to causation and damages. The district court found that another jury could have found that Dr. Lundeby's negligence was not the proximate cause of Blizzard's injuries because of an issue with respect to Blizzard's comparative negligence for his drinking and lifestyle choices, which Dr. Lundeby maintains was the true cause of the fistula.

Plaintiffs argue that the district court erred when it denied their motion for a new trial because the district court went outside the bounds of its discretion when it considered the issue of causation in its ruling. Plaintiffs argue that a court need not determine that the ultimate outcome of a case would be different; rather, a court only needs to consider whether the result, to the extent of the jury's verdict, would be different. Since the jury's result was merely that Dr. Lundeby was not negligent, the Plaintiffs argue the district court need only decide whether that result would be different and not whether a different jury would find causation and damages. Since the jury verdict was based merely on the one question of whether Dr. Lundeby was negligent, and since that one issue was contrary to the weight of evidence, Plaintiffs contend that a new trial would have a different result. Finally, Plaintiffs maintain that requiring a district court to examine every possible issue and defense would be unduly burdensome and would interfere with the role of a jury to consider those issues and defenses.

Dr. Lundeby argues that in order to find a different result would occur, the district court must conclude that a different jury would find (1) that Dr. Lundeby was negligent; (2) that Dr. Lundeby's negligence exceeded that of Blizzard; (3) that Dr. Lundeby's negligence was the proximate cause of the injury complained of; and (4) that some damage resulted. Dr. Lundeby argues that this Court's decision in *Warren v. Sharp*, 139 Idaho 599, 83 P.3d 773 (2003), stands

5

for the proposition that a trial court must consider all elements necessary for a party to ultimately prevail on his or her claim. Dr. Lundeby maintains that the district court properly considered all the elements necessary for Plaintiffs to succeed at a new trial, and it determined that Plaintiffs probably would not prevail on a new trial because of issues of causation. Thus, Dr. Lundeby maintains that the district court did not err in denying Plaintiff's motion for a new trial.

Idaho Rule of Civil Procedure 59(a)(6) provides that a "new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons: . . . Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law." "A trial judge may grant a new trial based on I.R.C.P. Rule 59(a)(6) where 'after he has weighed all the evidence, including his own determination of the credibility of the witnesses, he concludes the verdict is not in accord with his assessment of the clear weight of the evidence.'" *Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 779, 25 P.3d 88, 92 (2001) (quoting *Quick*, 111 Idaho at 766, 727 P.2d at 1194). This Court requires a trial court to apply a two-pronged test when determining whether to grant a new trial. *Robertson v. Richards*, 115 Idaho 628, 653, 769 P.2d 505, 530 (1987). First, a trial judge must consider whether the verdict was against the weight of the evidence. *Id.* at 654, 769 P.2d at 531. Second, a trial court must consider whether a different result would follow on retrial. *Id.* The second prong "requires more than a mere possibility; there must be a probability that a different result would be obtained in a new trial." *Warren*, 139 Idaho at 604, 83 P.3d at 777 (quoting *Sheridan*, 135 Idaho at 782, 25 P.3d at 95); *see also Burggraf*, 121 Idaho at 174 n.3, 823 P.2d at 778 n.3. But it is within the district judge's discretion to set aside a verdict even if there is substantial evidence to support it. *Sheridan*, 135 Idaho at 783, 25 P.3d at 96.

On appeal, Plaintiffs present an issue of first impression in Idaho: whether the result the district court should review is the jury's verdict on each question answered or the ultimate result of the entire case including all issues whether answered by the jury or not. Plaintiffs argue that the district court is required merely to examine the bases on which the jury reached its verdict to determine whether that result would be different. Plaintiffs contend that it would be too burdensome for the district court to reconsider every possible issue and defense to determine whether a new trial would produce a different ultimate result. Plaintiffs contend that because the jury verdict was separated into two forms and the jury did not address issues of proximate cause and damages, the judge was merely required to consider the result as rendered by the jury.

We hold that when considering a motion for a new trial pursuant to I.R.C.P. 59(a)(6), in deciding whether a different result would be obtained at a new trial, the judge must consider whether it is more probable than not that a different or more favorable result, as rendered by the questions the jury answered and only those questions the jury answered, would be obtained by a new trial. It is not required that the trial court conclude that a new result in the whole case would probably occur because as this Court has noted, "[i]t is always possible that a different result 'may' result if a party is given another try at a different jury." *Burggraf*, 121 Idaho at 174 n.3, 823 P.2d at 778 n.3. This Court has also held on multiple occasions that even if substantial evidence supports a jury verdict, a district judge may nonetheless exercise his or her discretion in granting a new trial. *Sheridan*, 135 Idaho at 782, 25 P.3d at 95; *Quick*, 111 Idaho at 766, 727 P.2d at 1194.

Dr. Lundeby relies largely on *Warren* to support the requirement that the judge must determine that the ultimate outcome of the case would be different because the *Warren* Court required the trial judge to also consider matters of comparative negligence. In that case, "the jury found there was no negligence on the part of Sharp that was the proximate cause of Glenn Warren's death." *Id.* at 604, 83 P.3d at 778. This Court held that "the district judge must conclude that the jury on retrial would not only find Sharp negligent, but also find that Sharp's negligence exceeded that of Warren." *Id.* To the extent that *Warren* is inconsistent with this opinion, it is overruled.

We conclude that in the present matter the district court abused its discretion because it failed to apply the applicable legal standards. When considering a motion for a new trial pursuant to I.R.C.P. 59(a)(6), in deciding the second prong of the legal standard, i.e. whether a different result would be obtained at a new trial, the judge must consider whether it is more probable than not that a different result would be obtained only as to the question(s) answered by the jury.

## VI. CONCLUSION

The district court's denial of Plaintiffs' motion for a new trial is vacated, and this case is remanded for further proceedings consistent with this Opinion. Costs on appeal are awarded to Plaintiffs as the prevailing party. Neither party requested attorney fees.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.

7